FILED

UNITED STATES DISTRICT COURT `24  `:  2: 4`
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PLAINTIFF TIMOTHY D. TAYLOR, on )
Behalf of Himself and All Others Similarly )
Situated, )
)
    Plaintiff, )
)
vs. )   Case No.: 6:09-CV-1290-Orl-31 KRS
)
)
BLUE CROSS AND BLUE SHIELD OF )
FLORIDA, INC., )
)
    Defendant. )
)
)
)
)
)
)

---

## CLASS ACTION COMPLAINT

Plaintiff Timothy Taylor, by and through his undersigned attorneys, based on his individual experiences, the investigation of counsel, and on information and belief, alleges on behalf of himself and on behalf of the proposed plaintiff Class as defined herein against Blue Cross and Blue Shield of Florida, Inc. ("Blue Cross and Blue Shield of Florida" or "BCBS-Florida") as follows:

### SUMMARY OF THE CASE

1.    This individual and proposed class action seeks unpaid benefits and equitable relief, pursuant to the Employee Retirement Income and Security Act of 1974 ("ERISA"),

1

arising from BCBS-Florida's systematic under-reimbursement of its group health members for "out-of-network" health care services and from other breaches of its obligations under ERISA.

2.      During all times relevant to this Complaint, Plaintiff was a member of a group health plan insured and administered by BCBS-Florida in Florida.

3.      BCBS-Florida provides health insurance coverage to more individuals in Florida than any other health insurer. It has approximately 4.2 million members and has about 32 percent of the Florida market—twice the size of its closest competitor. The method by which BCBS-Florida reimburses its members for covered services therefore has a great impact on many Floridians.

4.      BCBS-Florida is an ERISA fiduciary as to all of its insured members because it has discretionary authority to decide claims for benefits and, in fact, does so. In deciding claims for benefits, BCBS-Florida, creates, establishes, and implements all procedures for benefit claims processing and handling. BCBS-Florida is the final decision-maker with respect to paying claims for health benefits for (or to) its group plan members. As it is legally obligated to do, BCBS-Florida pays from its own funds health care benefits for (or to) its group health plan members. BCBS-Florida is the only entity that pays benefits for (or to its) group health plan members.

5.      Like many other health insurance companies, BCBS-Florida permits its members to receive health care services either from providers within the network ("Par Providers"), that is, providers who have contracted with BCBS-Florida to provide services at

CLASS ACTION COMPLAINT

discounted rates, or to use providers that do not participate in the network ("Non-Par Providers"), that is, providers who do not contract with BCBS-Florida.

6.      In order to receive the option to use Non-Par Providers, extra premiums must be paid. In exchange for those premiums, BCBS-Florida promises to provide certain benefits and services to its members related to out-of-network health care. As set forth more fully below, BCBS-Florida broke its agreement with Plaintiff and the class members in violation of ERISA by under-reimbursing them for out-of-network medical, surgical, dental and other services (including, but not limited to, anesthesia, lab work, durable medical equipment, pharmaceuticals, chiropractic and acupuncture, therapy and other necessary care), and by breaching other obligations under ERISA.

7.      The reimbursements that Plaintiff and the class members received were less than the amounts that BCBS-Florida was contractually obligated to pay for out-of-network ("ONET") services. Although Plaintiff and the class members were entitled by contract with BCBS-Florida to obtain medical services from Non-Par Providers, BCBS-Florida discouraged the use of Non-Par Providers by, among other things, improperly lowering ONET reimbursements and thereby increasing unpaid amounts for which Plaintiff and other BCBS-Florida members are financially responsible.

8.      When BCBS-Florida members receive ONET services, BCBS-Florida paid its members the lesser of the billed charge or the usual, customary and reasonable ("UCR") amount for that service.

CLASS ACTION COMPLAINT

9.     BCBS-Florida often refers to UCR as the "Allowed Amount" or "Allowable Amount."[1] BCBS-Florida states in communications with BCBS-Florida Members that the Member is financially responsible for any difference between UCR and the provider's actual (billed) charge for ONET services.

10.    BCBS-Florida states that each BCBS-Florida Member is financially responsible for any part of the charge above the UCR amount determined by BCBS-Florida. How BCBS-Florida determines UCR is thus a critical component of each member's health benefits.

11.    BCBS-Florida states that Allowed Amount or UCR shall be determined based on: BCBS-Florida's medical, payment, and/or administrative guidelines; pre-negotiated payment amounts; diagnostic related grouping(s) (DRG); payment for such services under the Medicare program; relative value scales; the charge(s) of the Provider; the charge(s) of similar Providers within a particular geographic area established by BCBS-Florida; and/or the cost of providing the Covered Service.

12.    BCBS-Florida improperly reduces its members' ONET reimbursements by using databases that are owned and operated by a third party, Ingenix, Inc. ("Ingenix"). Ingenix is owned by America's largest health insurance company, UnitedHealth Group. These databases are known as the Prevailing Healthcare Charges System ("PHCS") and Medical Data Research ("MDR") (collectively, "Ingenix databases"). These databases are fundamentally flawed and do not accurately reflect actual prevailing charges for health care

---

[1] Hereinafter, Plaintiff refers to this amount as UCR or UCR amount.

CLASS ACTION COMPLAINT

services. Nonetheless, BCBS-Florida uses these databases as a reimbursement rate-setting tool for ONET services to the detriment of its members.

13.     BCBS-Florida has breached its obligations under ERISA by using the Ingenix databases to make UCR determinations. BCBS-Florida uses the Ingenix databases to define UCR and thus determine reimbursement rates on ONET health care claims even though the databases are inherently flawed and invalid for UCR and systematically skew UCR amounts downward. The flaws and invalidity of the Ingenix data are alleged with particularity below.

14.     During the Class Period,[2] BCBS-Florida improperly used the Ingenix databases to set reimbursement rates for ONET claims when it knew or should have known that Ingenix had manipulated its databases by deleting from its data sets valid "high" charges by health care providers and deleting proportionately more "high" charges than "low" charges.

15.     During the Class Period, BCBS-Florida improperly used the Ingenix databases to set reimbursement rates for out-of-network claims when it knew or should have known that Ingenix deletes from its databases provider charges that with so-called health care claims coding "modifiers," which indicate procedures or services with special complications. Health care provider charges featuring such modifiers are usually higher than provider charges without modifiers.

16.     During the Class Period, BCBS-Florida improperly used the Ingenix databases to set reimbursement rates for ONET services when it knew or should have known that

---

[2] Plaintiff alleges that BCBS-Florida concealed its use of Ingenix databases and its breaches of fiduciary duty in connection therewith. Therefore, the limitations period was tolled and the Class Period will be determined through discovery of when BCBS-Florida began to systematically use Ingenix databases to deny claims for benefits.

CLASS ACTION COMPLAINT

Ingenix pools data for its databases from dissimilar providers (such as nurses, physician assistants and physicians).

17.    During the Class Period, BCBS-Florida improperly used the Ingenix databases to set reimbursement rates for ONET services when it knew or should have known that Ingenix fails to audit the data it receives from data contributor health plans to ensure that the health plans have submitted all appropriate data and that they have not improperly reported to Ingenix for use in its databases negotiated or discounted rates that providers have charged for health care services rather than charges actually billed by providers.

18.    During the Class Period, BCBS-Florida improperly used the Ingenix databases to set reimbursement rates for ONET services when it knew or should have known that some Ingenix data contributors delete "high" provider charges for health care services from the data they submit to Ingenix for use in the Ingenix databases.

19.    During the Class Period, BCBS-Florida improperly used the Ingenix databases to set reimbursement rates for ONET services when it knew or should have known that Ingenix used a deficient methodology to "derive" additional provider charges in the databases beyond the charges actually reported by Ingenix data contributor health plans to Ingenix. Ingenix's use of defective data to "derive" such additional provider charges caused the resulting rates to be defective and improper for use in setting reimbursements for health care services.

20.    In sum, during the Class Period, BCBS-Florida improperly used the Ingenix databases to set reimbursement rates for ONET services when it knew or should have known that these databases were flawed in the aforementioned ways and thus that these databases,

CLASS ACTION COMPLAINT

when used as a reimbursement tool by BCBS-Florida, predictably and improperly would result in adverse benefit determinations damaging Plaintiff and other BCBS-Florida Members.

21.    "Adverse benefit determination" is a term of art that is used when an insurance payor such as BCBS-Florida makes a decision to deny, reduce, terminate or not pay for all or part of a health benefit. An adverse benefit determination acts as an exclusion from coverage. As the entity excluding benefits when it renders an adverse benefit determination, BCBS-Florida has the burden to justify that its exclusion of benefits complies with its contractual obligations to its members.

22.    As shown here, BCBS-Florida's adverse benefit determinations on ONET services received by Plaintiff and the Class violated BCBS-Florida's obligations under ERISA. Plaintiff and the Class seek payment of unpaid amounts caused by BCBS-Florida's adverse benefit determinations on ONET services during the Class Period together with interest dating from the date of the original out-of-network adverse benefit determinations at issue and other appropriate equitable relief to remedy BCBS-Florida's breach of its health care contracts and violation of its fiduciary duties under ERISA.

## JURISDICTION AND VENUE

23.    ERISA governs the rights and duties of insurance companies and BCBS-Florida Members of employer sponsored health care plans. 29 U.S.C. §502, 29 U.S.C. §1132. This Court has jurisdiction under 29 U.S.C. §502(e) and 29 U.S.C. §1132(e).

CLASS ACTION COMPLAINT

24.    Venue is appropriate here for Plaintiffs' ERISA claims under 28 U.S.C. §1391 and 18 U.S.C. §1965(a) because (i) BCBS-Florida resides, is found, has an agent, and transacts business in this district; (ii) BCBS-Florida conducts a substantial amount of business in this district and insures and administers group health plans here; and (iii) Plaintiff lives in this district.

## PARTIES

25.    **Plaintiff Timothy D. Taylor.** Plaintiff is a resident of Kissimmee, Florida. He formerly worked for Innovative Marine Technology, Inc., ("IMT") in Winter Park, Florida. Incident to his employment there, Plaintiff participated in his employer's group insurance plan provided by BCBS-Florida. The contract and group numbers are, respectively, H43351849 and A4470-FC1. That group health coverage is subject to ERISA. During all relevant times, Plaintiff was a member of this group health plan insured and administered by BCBS-Florida. BCBS-Florida insures the benefits under the Plan, pays the benefits under the Plan, and makes all decisions about eligibility, coverage, and payment of benefits. Neither the plan nor the employer has any role in the aforementioned process.

26.    As a result of BCBS-Florida's claims procedures and adverse benefit determinations, Plaintiff and the Class Members received reimbursements that were less than the amount BCBS-Florida was obligated to pay for ONET services.

27.    **Defendant Blue Cross and Blue Shield of Florida, Inc.** BCBS-Florida is a mutual insurance company headquartered in Jacksonville, FL, primarily in the business of

CLASS ACTION COMPLAINT

selling and administering health insurance. It has approximately 4.2 million members or insureds.

## GROUNDS FOR RELIEF

### Plaintiff's Group Health Plan

28.     The group health plan for IMT is a fully insured plan governed by ERISA. The insurer for Plaintiff's group health plan is BCBS-Florida.

29.     For all intents and purposes, the terms of Plaintiff's plan are the terms set forth in the Evidence of Coverage booklet generated by BCBS-Florida and provided to members.

30.     Plaintiff's group health plan permits Plaintiff to choose ONET Providers for care.

31.     Plaintiff's group health plan provides that ONET Provider services shall be paid according to an Allowed Amount based on such factors as: BCBS-Florida's medical, payment, and/or administrative guidelines; pre-negotiated payment amounts; diagnostic related grouping(s) (DRG); payment for such services under the Medicare program; relative value scales; the charge(s) of the Provider; the charge(s) of similar Providers within a particular geographic area established by BCBS-Florida; and/or the cost of providing the Covered Service.

32.     BCBS-Florida does not disclose the data supporting these various factors, how it weighs the various factors, or whether some or all of the factors are used in making an adverse benefit determination.

CLASS ACTION COMPLAINT

33.    On March 29, 2008, Plaintiff received ambulance services from Orange County Fire and Rescue ("OCFR"), an ONET provider.

34.    Plaintiff sought payment for OCFR's services from BCBS-Florida.

35.    By explanation of benefits ("EOB") dated July 30, 2008, BCBS-Florida denied Plaintiff full payment of the amount of OCFR's services and paid Plaintiff less than the amount billed by OCFR and less than the amount to which Plaintiff was entitled.

36.    Plaintiff appealed BCBS-Florida's adverse benefit determinations in accordance with BCBS-Florida's contractually established appeal procedures and ERISA.

37.    Specifically, by letter dated September 12, 2008, Plaintiff appealed claim number Q100000111148002, OCFR services.

38.    The applicable regulations require BCBS-Florida to decide an appeal of an adverse benefit determination within sixty days. In special circumstances, an additional sixty is permitted provided that BCBS-Florida notified Plaintiff of those circumstances and the need for additional time. Under no circumstances may BCBS-Florida take more than 120 days to decide an appeal. 29 C.F.R. §503-1(i).

39.    BCBS-Florida did not write to Plaintiff to notify him that special circumstances required an additional sixty days to decide his appeal.

40.    On or about March 27, 2009, Plaintiff received a letter dated March 27, 2009 denying his appeal.

41.    By regulation, BCBS-Florida should have decided Plaintiff's appeal no later than January 10, 2009.

42.    Because BCBS-Florida failed to timely decide Plaintiff's appeal. Plaintiff was deemed to have exhausted his available administrative remedies concerning BCBS-Florida's adverse benefit determinations. 29 C.F.R. §503-1(l).

43.    Neither the EOB nor the letter denying Plaintiff's appeal explained how BCBS-Florida applied or calculated the various factors it purportedly relies on in determining the Allowed Amount for an ONET service.

44.    BCBS-Florida has not provided Plaintiff with all documents or information relied on, considered, submitted or generated in deciding his claim, despite Plaintiff's request for such information. BCBS-Florida only provided Plaintiff copies of materials mentioned in the letter denying his appeal and the plan booklet. Other materials, such as the data or information used or relied on to determine the amount BCBS-Florida paid on the ONET claim have not been provided, including, specifically, information and data used by BCBS-Florida in the following categories: BCBS-Florida's medical, payment, and/or administrative guidelines; pre-negotiated payment amounts; diagnostic related grouping(s) (DRG); payment for such services under the Medicare program; relative value scales; the charge(s) of the Provider; the charge(s) of similar Providers within a particular geographic area established by BCBS-Florida; and/or the cost of providing the Covered Service.

45.    BCBS-Florida has made other ONET/UCR benefit determinations adversely to Plaintiff through use of the Ingenix databases. By letter dated June 2, 2009, BCBS-Florida denied Plaintiff's claim for ONET services.

46.    Plaintiff has incurred personal expenses due to BCBS-Florida's Ingenix-related adverse benefit determinations.

CLASS ACTION COMPLAINT

**BCBS-Florida's Breach of Contract and Violation of Its ERISA Fiduciary Obligations**

47.      Upon enrollment in BCBS-Florida's health plans, Plaintiff and the Class received and entered into a contract called an Evidence of Coverage. The Evidence of Coverage sets forth the benefits Plaintiff and members of the Class are entitled to receive from BCBS-Florida.

48.      The Evidence of Coverage provides that BCBS-Florida Members are entitled to ONET benefits when they use out-of-network providers.

49.      For the reasons set forth here, BCBS-Florida has breached the Evidence of Coverage in adjudicating benefit claims made by Plaintiff and Class Members.

50.      BCBS-Florida is a fiduciary for Plaintiff and the Class in that it exercises full discretionary authority and control over benefit determinations: that is, BCBS-Florida is the only entity that decides and pays benefits under Plaintiffs health plan.

51.      BCBS-Florida suffers from a conflict of interest here because every dollar that it pays in benefits to its Members is one less dollar for BCBS-Florida.

52.      BCBS-Florida is obligated to abide by the specific contractual provisions of group health plans, including Plaintiff's group health plan, under ERISA.

53.      BCBS-Florida may not apply ONET adverse benefit determinations if they are not authorized or disclosed in a BCBS-Florida Member's Evidence of Coverage.

54.      As an ERISA fiduciary, BCBS-Florida is obligated to tell BCBS-Florida Members about the legal requirements affecting their benefits entitlements; BCBS-Florida systematically fails to do this.

CLASS ACTION COMPLAINT

55.    As an ERISA fiduciary, BCBS-Florida is obligated to fully inform BCBS-Florida Members of material facts related to their benefits and must comply with federal regulations governing claims procedures both as to initial claim denials and appeals. BCBS-Florida does not do so.

56.    BCBS-Florida's Evidences of Coverage fail to explain sufficiently, if at all, the basis for its out-of-network adverse benefit determinations and fail to cite the plan provisions BCBS-Florida relies upon in making these adverse decisions.

57.    BCBS-Florida auto-adjudicates and makes adverse benefit determinations for ONET services-that is, it determines the Allowed Amount, based on the Ingenix databases either without knowing the data or the methodology used by Ingenix to determine amounts reported at any percentile of the Ingenix databases or, alternatively, with the knowledge that Ingenix's data is flawed and/or that its methodology for describing supposedly prevailing health care charges is flawed.

58.    BCBS-Florida fails to provide UCR data when requested, in violation of federal law.

59.    BCBS-Florida fails to advise BCBS-Florida Members about the disclaimer Ingenix applies to its database, which by its terms prohibits the direct use of the Ingenix databases as a payor's UCR standard. BCBS-Florida auto-adjudicates claims for ONET services (and auto-adjudicated Plaintiff's claims for ONET services) using the Ingenix databases in violation of this prohibition.

CLASS ACTION COMPLAINT

60.    BCBS-Florida fails to provide a "full and fair review" of claims determinations to Plaintiffs and other BCBS-Florida Members, and BCBS-Florida's appeals process therefore violates federal employee benefits law.

61.    BCBS-Florida systematically under-pays claims for benefits using Ingenix data so that it can increase its profits.

62.    Plaintiff challenges BCBS-Florida's application of rules and policies in making ONET adverse benefit determinations that are not authorized by Evidences of Coverage, and challenges Defendant's violation of its fiduciary duties and its routine failure to comply with ERISA.

## UCR AND THE INGENIX DATABASES

63.    BCBS-Florida uses the Ingenix databases to make UCR determinations. BCBS-Florida obtains Ingenix data from Ingenix and loads the data onto its internal claims platforms. BCBS-Florida's claims processors access that data and resolve claims automatically in a process called auto-adjudication.

64.    Ingenix informed its data users (such as BCBS-Florida) that it does not endorse, approve or recommend the use of Ingenix data for UCR. Ingenix data is produced with the following disclaimer:

> The Ingenix data, whether charge data or conversion factor data, are provided to subscribers for informational purposes only. Ingenix, Inc. disclaims any endorsements, approval, or recommendation or particular uses of the data. There is neither a stated nor an implied 'reasonable and customary' charge (either actual or derived). . . . Any interpretation and/or use of the data by the subscriber is solely) and exclusively at the discretion of the subscriber.

14

CLASS ACTION COMPLAINT

Ingenix also informed data users (including BCBS-Florida) that they cannot "represent" the Ingenix data *other than* as described in the disclaimer.

65.     BCBS-Florida was aware of this disclaimer but failed to advise its BCBS-Florida Members of the disclaimer and both used and represented the Ingenix data inconsistently with the disclaimer.

66.     By systematically making UCR determinations without valid data to justify reimbursing Plaintiff and others amounts for ONET health services that are less than the actual amounts billed by Non-Par Providers, BCBS-Florida has violated its obligation to comply with Evidences of Coverage upon which Plaintiffs and other BCBS-Florida Members are entitled to rely.

67.     Ingenix produces two cycles of Ingenix data a year, which include medical, surgical, anesthesia and Health Care Financing Administration common procedure coding system services ("HCPCS"). HCPCS includes pharmaceuticals, injections, blood, medical equipment, ambulance transport, medical screenings and the like.

68.     The Ingenix databases are purportedly designed to collect and report actual charge data by health care providers for out-of-network health care services, from which UCR amounts can be determined. For some services, the Ingenix databases feature "derived data." Derived data uses relative values and averages charges for a number of procedures in the same "bodily area" as the procedure for which a derived amount is calculated.

69.     The Ingenix databases are based on charge data contributed to Ingenix by health plans. Among the health plans that contribute data to Ingenix are Aetna, CIGNA,

CLASS ACTION COMPLAINT

United Healthcare (the parent company of Ingenix) and other insurance payors (which also use the final published data to price out-of-network claims as UCR).

70.    Ingenix extensively edits the charge data contributed by these data contributors, skewing the data downward to make it appear as if the amounts health care providers actually charge patients for health care services are much lower than they actually are. These data contributors also extensively pre-edit the charge data prior to sending their data to Ingenix and contribute less-than-complete data to Ingenix, causing further skewing of the data to the detriment of health plan members like Plaintiff who obtain out-of-network health services covered by Ingenix-using health plans like BCBS-Florida. BCBS-Florida knew or should have known of these flaws.

71.    BCBS-Florida has breached its Evidences of Coverage (including Plaintiff's) and its fiduciary duties under ERISA by using the Ingenix databases to make UCR determinations. BCBS-Florida uses the Ingenix databases to price UCR even though they are inherently flawed and invalid, and are an inadequate and improper basis for UCR determinations.

72.    The Ingenix databases do not reflect the fees "billed by a majority of Physicians" because, among other things, (i) Ingenix does not determine the number of "physicians or other providers in a given geographic region;" (ii) Ingenix does not determine whether the data comes from physicians or non-physicians; and (iii) the charges collected for a procedure could in fact all come from a *single provider*. The "complexity or severity" of a "specific case" is not determined or accounted for in the Ingenix databases. Ingenix edits out all charges submitted with the claims code modifier indicating increased complexity.

16

CLASS ACTION COMPLAINT

73.     Moreover, Ingenix does not collect its own billing data and does not verify the accuracy of the data it receives.

74.     Ingenix receives data from health insurance companies who volunteer data about the amounts that happen to have been billed by an undisclosed number of unidentified healthcare providers for specific CPT code services. Ingenix does not even regularly audit the quality of the data it receives.

75.     The data received by Ingenix does not identify the providers, the total number of providers whose charges make up the database for a given CPT code at any given time, or purport to even represent all the provider bills received for a given procedure by a given health insurance company in a given reporting period. Nor does Ingenix attempt to determine whether the billed charges for a given provider for a given procedure are the given provider's usual and customary charge or the a discounted rate under a network contract.

76.     Whenever BCBS-Florida uses the Ingenix databases as the method to determine UCR, BCBS-Florida relies on the Ingenix data and gives no consideration to the increased severity or complexity of a specific case in determining reimbursement for the health care services in question. BCBS-Florida systematically failed to disclose this critical information to Plaintiff and other BCBS-Florida Members and to health care providers and regulators.

77.     Thus, courts and government agencies have found the Ingenix data to be flawed. As one court explained, Ingenix's data is not reliable or accurate and its statistical extrapolations are flawed:

> Ingenix relies on its "data contribution program" in which some, but not all, of only those health insurers that are Ingenix clients submit information, on a

17

CLASS ACTION COMPLAINT

purely voluntary basis, about the amounts they happen to have been billed by an undisclosed number of unidentified health care providers for specific CPT code services. While Ingenix requires those of its health insurer clients that elect to participate to certify that the number and amount of the CPT code billings they submit are accurate, there is no Ingenix mechanism to enforce or validate the client certificates. Although [the] Ingenix Manager of Research and Development mentioned occasional audits by Ingenix of the data it receives, she had no knowledge of when such an audit had last been made. Indeed, Ingenix itself prints the following disclaimer on its products: "The database is provided for informational purposes only and Ingenix disclaims any endorsement, approval or recommendation of data in the database."

Further, the billing data volunteered by some of its clients to Ingenix lists only the medical service CPT code number, the bill amount, the date of the service, and the provider's zip code. The data does not name, or otherwise identify, the medical providers who billed Ingenix insurer clients and whose bill amounts were then passed along to Ingenix. Nor does the information disclose the total number of providers whose charges may make up the Ingenix database at any point. Ingenix cannot guarantee that all of the bills received for a particular CPT code service at any given time have been reported, much less accurately reported, by its volunteer insurers. Nor can Ingenix ascertain if the bills that are listed constitute the unnamed providers' usual and customary charges for the service, or, instead, a discounted rate required by the agreements one or more of the providers may have had with health care insurers. While Ingenix requests that the CPT code billing data be accurate and complete, Gee conceded at trial that Ingenix remains "at the mercy" of its voluntary data contributors with respect to that result.

<p style="text-align:center">***</p>

Ingenix analyses [are] supposed to permit the [insurance carrier] to compare [a provider's] professional rates with other health providers' bills for the same services in [the provider's] geographical area. [The Ingenix Manager of Research and Development] concede[s], however, that the Ingenix database does not include data on the total number of times a particular CPT code service was actually performed in a given area at any time, or what the actual dollar range of provider fees was for the service. [The Ingenix Manager of Research and Development has] testified that Ingenix billing data is neither a "universal sample" of professional services and charges, nor even a random sample of what other professionals were charging for [a given] CPT code ... at the time.... At best, the Ingenix database includes the bills of an unspecified number of medical providers who, within a specific period of time, happened to have billed only those health insurers that were not only Ingenix clients, but also Ingenix clients that elected to participate in its voluntary data contribution

<p style="text-align:center">18</p>

<p style="text-align:center">CLASS ACTION COMPLAINT</p>

program. Thus, an Ingenix statistical conclusion as to the specific dollar amount of, for example, the 80th percentile of billings for manual therapy, was not evidence of the 80th percentile of actual charges for that service in [the provider's] area. The conclusion is, instead, proof of nothing more than the amount of the 80th percentile of only those charges that happen to be included in Ingenix's particular database. As stated, it is unknown how many providers' bills for an initial examination or manual therapy may have been included in the Ingenix database at the time of ... treatment, or at any given point. Thus, the Ingenix materials ... did not constitute evidence of the dollar amount of the usual and customary charges in [the provider's] area for the services he provided, much less proof of what could be considered fair and reasonable charges for those services.

*Davekos v. Liberty Mut. Ins. Co.*, 2008 WL 241613 (Mass.App.Div. Jan. 24, 2008), Exhibit A hereto.

78.    The widespread flaws in the Ingenix data led to several investigations by the Attorney General of New York. A report prepared by the New York Attorney General found that insurers using Ingenix data systematically underpaid claims by insureds and have been engaged in rampant conflicts of interest. In New York, for example, Ingenix databases understate the market rate of ordinary doctor's office visits by 28%, which "translates to at least hundreds of millions of dollars in losses for consumers over the past ten years across the country." *Health Care Report: The Consumer Reimbursement System is Code Blue*, State of New York Office of the Attorney General (Jan. 13, 2009) ("*Report*") at 2, Exhibit B hereto.

79.    The Report continues:

[T]he out-of-network system is broken. Insurers mislead and obfuscate their policy language. They promise to reimburse based on usual and customary rates – a form of market rate – but then reimburse based on schedules compiled by one of their own, the nation's second largest health insurer, which has an interest in depressing reimbursement rates. They hide this conflict of interest from their members. They pretend an independent database underlies these rates – it does not. Our investigation found that the Ingenix schedules themselves, created in a well of conflicts, are unreliable, inadequate, and wrong – usually at the expense of the consumer.

CLASS ACTION COMPLAINT

*Report* at 2-3.

> The current industry model for reimbursing out-of-network care is fraudulent. The industry uses a conflict-laden database riddles with errors at the expense of the consumer. The database is neither independent nor fair. This leads to chronically flawed decisions. Given the heavy burden of health care costs that working families must bear when insurers fail to pay what they owe, the out-of-network system must be fixed.

*Report* at 6-7.

80.    The Attorney General of New York investigated over a dozen of the largest health insurance companies doing business in New York, including several BlueCross BlueShield entities. Among other things, he found that no insurers disclosed that a major health insurer, United Health Group, owns and operates the Ingenix databases and that health plan terms and language were routinely confusing. *Report* at 17-18.

81.    The Attorney General also studied the accuracy of the Ingenix databases. The process involved analyzing millions of health care bills from various sources to determine the amount actually charged by providers versus the amount that the Ingenix databases stated was usual and customary for a service in a given geographical area. The analysis revealed that insurers using Ingenix systematically under-reimbursed members for ONET services by approximately 28%. *Report* at 19-20.

82.    Eleven health insurance companies doing business in New York each entered into an Assurance of Discontinuance pursuant to which the company agreed, among other things, to discontinue using Ingenix databases except as mandated by law. Even Ingenix's parent, UnitedHealth Group Inc. agreed to stop using Ingenix databases and to support the development of new database for ONET claims.

CLASS ACTION COMPLAINT

83.    On June 24, 2009, the Office of Oversight and Investigations of the United States Senate Committee On Commerce, Science And Transportation issued a report entitled *Underpayments To Consumers By The Health Insurance Industry*, Exhibit C hereto. That report states bluntly that the Committee "ha[s] determined that in every region of the United States, large health insurance companies have been using two faulty database products owned by Ingenix, Inc., to under-pay millions of valid health insurance claims. The companies have used these Ingenix database products without providing even the most basic information about them to consumers or health care providers." *Report* at i.

84.    The Senate report further notes that "[o]ver the past several years, a succession of private lawsuits and government investigations has revealed that *the largest health insurance companies in the United States have been under-reimbursing their customers for out-of-network health care services. While insurance carriers have been promising to provide their customers with a certain level of coverage, they have actually been paying out-of-network claims at a lower level. The result of this practice is that American consumers have paid billions of dollars for health care services that their insurance companies should have paid.*" *Id.* (emphasis added).

## BCBS-FLORIDA FAILS TO PROVIDE FULL AND FAIR REVIEW OF CLAIMS

85.    BCBS-Florida functions as a claims administrator and fiduciary within the meaning of ERISA for Plaintiff and the Class in that it controls the claims administration process and exercises full discretionary authority over all claims for benefits. Plaintiff and the

CLASS ACTION COMPLAINT

Class are therefore entitled to receive a "fall and fair review" of all claims decided by BCBS-Florida. BCBS-Florida decides how much to pay members for out of network services.

86.     Although BCBS-Florida was obligated to do so, BCBS-Florida failed to provide a "full and fair review" of denied claims pursuant to ERISA §503, 29 U.S.C. §1133 (and the regulations promulgated thereunder) for Plaintiff and the Class by making ONET benefit determinations that are inconsistent with the terms of Plaintiff's' Evidence(s) of Coverage, by failing to disclose the "specific reasons" for ONET benefit determinations, as well as by failing to disclose data and/or the methodology it relied on in making ONET benefit determinations.

87.     Specifically, BCBS-Florida did not and does not explain or disclose to its members its use of invalid Ingenix data. BCBS-Florida did not provide to Plaintiff (or to any class member) the Ingenix data that it relied on in deciding Plaintiff's claims.

88.     BCBS-Florida does not disclose its use of Ingenix data in evidences of coverage or group policies. It does not tell its members that it uses Ingenix to decide how to pay ONET claims. BCBS-Florida conceals its use of Ingenix by not providing Ingenix data in response to member requests for information used to decide a claim for benefits.

89.     BCBS-Florida's use of this inherently and deeply flawed database, as described above, was and is a systemic and widespread failure in claims administration. BCBS-Florida adopted the use of Ingenix for the purpose of retaining for itself benefits payments owed to its members.

90.     Plaintiff and the Class have been harmed by BCBS-Florida's failure to provide a "full and fair review" of appeals submitted by Plaintiff and the Class under ERISA

CLASS ACTION COMPLAINT

§503, 29 U.S.C. §1133, and by BCBS-Florida's failure to disclose information relevant to

BCBS-Florida Members' benefits in violation of ERISA.

## CLASS ACTION ALLEGATIONS

91.    Plaintiff brings this action on his own behalf and on behalf of a class defined

as:

> All persons in the United States who are, or were members in any
> employer plan insured or administered by BCBS-Florida and
> subject to ERISA who received medical services or supplies from
> an out-of-network provider and received reimbursement that was
> less than the provider's billed charge.

92.    Plaintiff brings ERISA claims against BCBS-Florida on his own behalf and on

behalf of the Class to recover benefits due Class members under the plan, to enforce and

clarify their rights under ERISA §502(a)(l)(B), 29 U.S.C. §1132(a)(l)(E), and to remedy

BCBS-Florida's failure to provide a "full and fair review" of the decisions denying claims

under ERISA §503, 29 U.S.C. §1133. Further, the Class alleges that BCBS-Florida is a

fiduciary that has violated its fiduciary duty of loyalty and care under ERISA § §404(a)(1)(B)

and (D), by relying, among other things, on Ingenix databases that are invalid for the purpose

of determining UCR reimbursement, by making out-of-network adverse benefit

determinations that systematically reduced reimbursement without any supporting disclosure

or contractual authority and by failing to provide required data and other information to

BCBS-Florida Members.

93.    BCBS-Florida has violated its fiduciary duties of care and loyalty to its

BCBS-Florida Members by using undisclosed reimbursement rules that are unauthorized by

a BCBS-Florida Member's Evidence of Coverage. BCBS-Florida made misstatements to BCBS-Florida Members that were intended to, and/or did in practice, discourage BCBS-Florida Members from understanding the claims adjudication basis used in BCBS-Florida's out-of-network adverse benefit determinations.

94.     BCBS-Florida acted and continues to act as an adversary to its BCBS-Florida Members, in violation of its fiduciary obligations to them.

95.     BCBS-Florida discouraged claims appeals by its members by providing insufficient information about its ONET adverse benefit determinations.

96.     The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of hundreds of thousands of employees and their dependents who are participants and BCBS-Florida Members in group health plans insured, offered or administered by BCBS-Florida. The precise number of members in the Class is within BCBS-Florida's sole custody and control. Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for the Class.

97.     Common questions of law and fact include:

- Whether BCBS-Florida is a fiduciary;

- Whether BCBS-Florida calculated Class members' ONET benefits accurately when it used Ingenix;

- The standard of review applicable to BCBS-Florida's adverse benefit determinations;

- Whether BCBS-Florida had a conflict of interest when deciding claims for out-of-network benefits;

- Availability of injunctive relief;

- Availability of monetary equitable relief such as disgorgement.

24

CLASS ACTION COMPLAINT

98.    The named Plaintiff's claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, BCBS-Florida has breached its statutory and contractual obligations to Plaintiff and the Class through and by a uniform pattern or practice as described above.

99.    The named Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action and ERISA litigation and has no interests antagonistic to or in conflict with those of the Class. For these reasons, the named Plaintiff is an adequate class representative.

100.    The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for BCBS-Florida as to the Class.

101.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them. Given the uniform policies and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

102.    Common fact and legal issues exist as to all Class members and predominate over any questions affecting solely individual members of the Class, including those class claims, issues and defenses listed above.

CLASS ACTION COMPLAINT

## CLAIMS FOR RELIEF

### COUNT I

### CLAIM FOR BENEFITS
### UNDER ERISA §502(a)(1)(B)

103.    The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth therein.

104.    BCBS-Florida is liable for a breach of its obligations to pay BCBS-Florida Members that are insured by, funded by or administered by BCBS-Florida pursuant to the terms of their group health plans. BCBS-Florida breached the BCBS-Florida Members' contracts of insurance known as Evidences of Coverage by using flawed and invalid Ingenix databases to calculate UCR and is liable to BCBS-Florida Members whenever BCBS-Florida (or its third party vendors) determined UCR based on such data.

105.    Each and every time BCBS-Florida calculated UCR using Ingenix data that was also outdated, BCBS-Florida violated Plaintiffs' Evidences of Coverage, all of which explicitly or by operation of law prohibit the use of outdated data to calculate UCR. In addition, the use of outdated data by BCBS-Florida violates ERISA.

106.    Plaintiff is owed interest back to the date his claims were originally submitted for all out-of-network adverse benefit determinations that were not contractually authorized by his Evidence(s) of Coverage and that improperly reduced his reimbursements.

107.    Plaintiff and the Class are entitled to unpaid benefits and/or restitution from BCBS-Florida, as well as declaratory and injunctive relief related to enforcement of the terms of Plaintiff's health plan, and to clarify future benefits. BCBS-Florida is liable to Plaintiff and the Class for unpaid benefits, interest, attorneys' fees, and such other penalties as this

26

CLASS ACTION COMPLAINT

Court deems just, under ERISA §502(a)(l)(B), 29 U.S.C. §1132(a)(l)(B). In addition, Plaintiff and the Class seek costs, prejudgment interest and other appropriate equitable relief, including the issuance of appropriate declaratory and injunctive relief against BCBS-Florida.

## COUNT II

### BREACHES OF FIDUCIARY DUTY UNDER
### ERISA §404 IN CONNECTION WITH
### SYSTEMIC FAILURES IN CLAIMS PROCESSING

108.    The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth herein.

109.    BCBS-Florida acted as a fiduciary to Plaintiff and the Class in connection with BCBS-Florida Members' group health plans, as such term is understood under ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

110.    Section 502(a)(3), 29 U.S.C. §1132(a)(3), allows Plaintiff to sue a fiduciary for appropriate equitable relief. Reformation of claims processing procedures is appropriate relief under section 502(a)(3) because such relief may not be available under section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

111.    As a fiduciary of group health plans under ERISA, BCBS-Florida owes BCBS-Florida Members in such plans a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of an enterprise of like character. Further, fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan. ERISA §404(a)(1)(B) and (D), 29 U.S.C. §1104(a)(1)(B) and (D). In failing to act prudently, and in

27

CLASS ACTION COMPLAINT

failing to act in accordance with the documents and instruments governing the plan, BCBS-Florida violated its fiduciary duty of care.

112.    BCBS-Florida violated its fiduciary duty of loyalty by knowingly using flawed Ingenix data to routinely make ONET adverse benefit determinations that were unauthorized by Evidences of Coverage and other group health plan materials and that benefited BCBS-Florida at the expense of BCBS-Florida Members. BCBS-Florida also failed to inform BCBS-Florida Members of flaws in the Ingenix databases that make their use inappropriate to calculate UCR reimbursement.

113.    Plaintiff is entitled to assert a claim for relief for BCBS-Florida's violation of its fiduciary duties under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), including restitution, injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment in his favor against Defendant as follows:

A.    Declaring that BCBS-Florida has violated its fiduciary duties including the duties of loyalty and care to Plaintiff and the Class, and awarding appropriate relief;

B.    Declaring that BCBS-Florida has breached the terms of its Evidences of Coverage and other group health plan documents and awarding unpaid benefits to Plaintiff and the Class, as well as awarding injunctive and declaratory relief based on BCBS-Florida's use of out-of-network adverse benefit determinations undisclosed and unauthorized by Evidences of Coverage and group health plan summary documents;

CLASS ACTION COMPLAINT

C.    Declaring that BCBS-Florida has breached the terms of BCBS-Florida Member Evidences of Coverage and group health plan summary documents by lowering reimbursement in the undisclosed and unauthorized ways detailed herein, and awarding declaratory and injunctive relief to remedy such breaches;

F.    Awarding Plaintiff the value of his benefits and such other relief as may be appropriate;

I.    Declaring that BCBS-Florida has failed to provide a "full and fair review" to Plaintiff and the Class under ERISA §503, 29 U.S.C. §1133, and awarding compensatory, injunctive, declaratory and other equitable relief to Plaintiff and the Class to ensure compliance with ERISA and ERISA regulations;

L.    Permanently enjoining BCBS-Florida from using the Ingenix databases and/or from making UCR determinations in the absence of valid and reliable data substantiating the lesser-adjudicated claims amounts;

M.    Permanently enjoining BCBS-Florida from using or causing others to use outdated Ingenix data in connection with payment of out-of-network benefits claims by BCBS-Florida Members;

N.    Preliminarily and permanently enjoining BCBS-Florida from applying out-of-network adverse benefit determinations where the BCBS-Florida Members' Evidences of Coverage and group health plan summary documents do not disclose or authorize them;

O.    Preliminarily and permanently enjoining BCBS-Florida from discouraging appeals and/or deciding appeals in a manner inconsistent with federal and state law;

CLASS ACTION COMPLAINT

P.     Preliminary and permanently enjoining BCBS-Florida from discouraging out-of-network care or placing undisclosed obstacles in the path of BCBS-Florida Members seeking to access out-of-network care;

Q.     Awarding Plaintiffs and the Class the costs and disbursements of this action, including reasonable counsel fees, costs and expenses in amounts to be determined by the Court;

R.     Awarding interest from date of initial out-of-network adverse benefit determinations on all unpaid amounts[3];

S.     Awarding prejudgment interest; and

T.     Granting such other and further relief as is just and proper.


DATED: July 24, 2009.


_____
William B. Young, Jr., Esq. (Fla. Bar 717541)
Trial Counsel
Colling, Gilbert, Wright & Carter
801 North Orange Avenue, Suite 830 Top Floor
Orlando, Florida 32801
Phone: (407) 712-7300
Facsimile: (407) 712-7301
Email: wyoung@thefloridafirm.com

Gregory Y. Porter (to be admitted pro hac vice)
Bailey & Glasser LLP
910 17th Street, NW
Suite 800

---

[3] To the extent that interest on Plaintiff's and the Class' wrongfully denied benefit claims is not permitted under section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), Plaintiff seeks recovery of such interest pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3).

CLASS ACTION COMPLAINT

Washington, DC 20006
Phone: (202) 463-2101
Facsimile: (202) 463-2103
Email: gporter@baileyglasser.com

Brian A. Glasser (to be admitted pro hac vice)
Michael L. Murphy (to be admitted pro hac vice)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Phone: (304) 345-6555
Facsimile: (304) 342-1110
Email: bglasser@baileyglasser.com
mmurphy@baileyglasser.com

Todd M. Schneider (to be admitted pro hac vice)
Mark T. Johnson (to be admitted pro hac vice)
Schneider Wallace Cottrell Brayton Konecky LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Phone: (415) 421-7100
Facsimile: (415) 421-7105
Email: tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com

Garrett W. Wotkyns (to be admitted pro hac vice)
Schneider Wallace Cottrell Brayton Konecky LLP
7702 E. Doubletree Ranch Road, Suite 300
Scottsdale, AZ 85258
Phone: (480) 607-4368
Facsimile: (480) 348-3999
Email: gwotkyns@schneiderwallace.com

Edwin R. Lamberth (to be admitted pro hac vice)
Steven L. Nicholas (to be admitted pro hac vice)
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, AL 36604
Phone: (251) 471-6191
Facsimile: (251) 479-1031
Email: rel@cunninghambounds.com
sln@cunninghambounds.com

Mark A. Chavez (admitted pro hac vice)
Nance Becker (admitted pro hac vice)
Jonathan E. Gertler (to be admitted pro hac vice)
Chavez & Gertler LLP
42 Miller Avenue
Mill Valley, California 94941

32

CLASS ACTION COMPLAINT