UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
Orlando Division

TIMOTHY D. TAYLOR,

        Plaintiff,                             Case No. 6:09-cv-1290-Orl-31KRS

vs.

BLUE CROSS AND BLUE SHIELD             ***DISPOSITIVE MOTION***
OF FLORIDA, INC.,

        Defendant.

_____/

## DEFENDANT BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
### (And Incorporated Memorandum of Law)

Defendant Blue Cross and Blue Shield of Florida, Inc. ("BCBSF"), by its attorneys, MCDERMOTT WILL & EMERY LLP, pursuant to Fed. R. Civ. P. 12(b)(6), moves this Court to dismiss Plaintiff Timothy D. Taylor's Class Action Complaint under the Employee Retirement Income Security Act ("ERISA"), for the following reasons:[1]

> (I)      The Complaint fails to state a claim for health plan benefits under Section 502(a)(1)(B) of ERISA because Plaintiff does not identify a specific plan provision that provides the benefits requested;

> (II)    The Complaint fails to state a claim for health plan benefits under Section 502(a)(1)(B) of ERISA to the extent BCBSF does not control administration of benefits under the plan;

> (III)   The Complaint fails to state a claim for breach of fiduciary duty under Section 502(a)(3) of ERISA because Plaintiff has an adequate remedy under Section 502(a)(1)(B) or other specific provisions of ERISA;

> (IV)   The Complaint fails to state a claim for breach of fiduciary duty under Section 502(a)(3) of ERISA based upon denial

---

[1] All emphasis herein is added unless otherwise noted.

of a "full and fair review," misrepresentation or omission, or equitable restitution; and

(V)    The Complaint fails to state a claim for violation of ERISA's disclosure requirements.

## PRELIMINARY STATEMENT

Plaintiff, an insured, has filed this suit claiming that BCBSF, his health insurer, violated ERISA by using—and failing adequately to disclose its use of—"Ingenix" data in calculating payments for out-of-network services.[2] *See* Complaint ¶¶ 1, 6, 12-13, 20, 22, 57, 63, 71. As a result of BCBSF's alleged violations of ERISA, Plaintiff claims that BCBSF under-reimbursed him for out-of-network ambulance services resulting in increased financial responsibility for Plaintiff. *See id.* ¶ 7 (alleging that the "reimbursements that Plaintiff and the class members received were less than the amounts that [BCBSF] was contractually obligated to pay for out-of-network services" and therefore increased "unpaid amounts for which Plaintiff and other [BCBSF] members are financially responsible"). Based upon these basic allegations, Plaintiff seeks "unpaid benefits and equitable relief" for "under-reimbursement" and "other breaches of [BCBSF's] obligations under ERISA." *Id.* ¶¶ 1, 6.

According to the Complaint, Plaintiff participated in his former employer Innovative Marine Technology, Inc.'s group health insurance plan insured by BCBSF. *See id.* ¶¶ 25, 28. Plaintiff alleges that the plan is governed by ERISA. *See id.* On March 29, 2008, Plaintiff received medical services from Orange County Fire and Rescue

---

[2] BCBSF emphatically denies using any Ingenix data in calculating payment for out-of-network services for Plaintiff and the vast majority of putative class members.

("OCFR"), a non-participating (out-of-network) provider in BCBSF's provider network.[3] *See id.* ¶ 33. While BCBSF reimbursed Plaintiff for OCFR's services in accordance with the terms of Plaintiff's plan, OCFR's billed charges exceeded the amount allowed by the plan, leaving Plaintiff responsible for the balance. *See id.* ¶¶ 34-35.

In Count 1 of the Complaint, Plaintiff seeks to recover the allegedly miscalculated benefits under Section 502(a)(1)(B) of ERISA. *See id.* ¶¶ 104-07. In Count 2, Plaintiff claims that BCBSF breached its fiduciary duties under Section 502(a)(3) of ERISA by miscalculating the benefits and failing to disclose its use of Ingenix data. *See id.* ¶¶ 109-13. In addition to Plaintiff's individual claims, Plaintiff also purports to represent a nationwide class of participants in ERISA health plans insured or administered by BCBSF who were reimbursed for out-of-network medical services or supplies at less than the provider's billed charge. *See id.* ¶¶ 1, 91-92.

## STANDARD OF REVIEW

Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id. Twombly's* fact-pleading requirements are even more substantial where, as here, the Complaint is likely to involve complex litigation and costly discovery. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)

---

[3] In contrast to non-participating (out-of-network) providers, participating (network) providers have agreements with BCBSF setting the allowed amount for specific services.

(stating that "a fuller set of factual allegations may be necessary to show that relief is plausible"). Plaintiff's putative ERISA class action raises precisely the type of complex litigation issues that require a fuller set of factual allegations than might ordinarily be required. *Cf. Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA [is] an enormously complex and detailed statute.").

## ARGUMENT

### I. The Complaint Fails to State a Claim for Health Plan Benefits under Section 502(a)(1)(B) Because Plaintiff Does Not Identify a Specific Plan Provision that Provides the Benefits Requested

The Court should dismiss Count 1 for health plan benefits under Section 502(a)(1)(B) of ERISA because Plaintiff fails to identify a specific plan provision that provides the benefits requested. Under Section 502(a)(1)(B), a participant or beneficiary of an ERISA health plan may file suit "to recover benefits due to him <u>under the terms of his plan</u>, to enforce his rights <u>under the terms of the plan</u>, or to clarify his rights to future benefits <u>under the terms of the plan</u>." *See also Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1338 (11th Cir. 2006) (noting that Section 502(a)(1)(B) authorizes three distinct remedies—recovery of accrued benefits, a declaratory judgment of entitlement to benefits, and an injunction requiring payment of benefits in the future).[4]

---

[4] Plaintiff's request for "such other *penalties* as this Court deems just" under Section 502(a)(1)(B) (Complaint ¶ 107) should be stricken because "statutory penalties" is a term of art under ERISA that refers to certain specific dollar penalties under Section 502(c). Plaintiff has not pled a violation of Section 502(c), and his request for "penalties" has no basis under Section 502(a)(1)(B). *See Jackson v. Brach Corp.*, 937 F. Supp. 735, 741 (N.D. Ill. 1996) (citing *Kleinhans v. Lisle Savings*, 810 F.2d 618, 622 (7th Cir. 1987)). Similarly, Plaintiff's allegation that he incurred "personal expenses" (Complaint ¶ 46) as a result of BCBSF's alleged violations of ERISA also has no basis under Section 502(a)(1)(B).

Under Section 502(a)(1)(B), claimants are limited to recovering only the "benefits specified in the plan." *Senese v. Teamsters Pension Fund*, 237 F.3d 819, 825 (7th Cir. 2001) (citation omitted). "To adjudicate . . . a claim" under Section 502(a)(1)(B), the court thus "must identify the terms of the plan." *Roarty v. AFA Protective Sys.*, 2008 U.S. Dist. LEXIS 75745, at *20 (E.D.N.Y. Sep. 30, 2008) (quoting *Feifer v. Prudential Ins.*, 306 F.3d 1202, 1208 (2d Cir. 2002)). A complaint that fails to "identify a *specific plan term* that confers the benefit in question" must be dismissed. *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 174 (D.C. Cir. 2006) (affirming dismissal of complaint under Section 502(a)(1)(B)); *see also Gunderson v. St. Louis Connectcare*, 2009 U.S. Dist. LEXIS 24871, at *6 (E.D. Mo. Mar. 26, 2009) (plaintiff must "identify the *specific provisions* of the plan itself that were breached"); *Decatur Healthcare v. Blue Cross*, 2009 WL 742678, at *3 (S.D. Fla. Mar. 20, 2009) (plaintiff must "identify[] a certain plan term" and show how it was "alleged[ly] violat[ed]").

In the Complaint, Plaintiff concedes that BCBSF paid Plaintiff for out-of-network ambulance services. *See* Complaint ¶ 35. Plaintiff takes issue, however, with the amount that BCBSF paid for these services, alleging that BCBSF breached the terms of his health plan and violated ERISA by purportedly using certain "Ingenix data" to determine the "allowed amount." *See id.* ¶¶ 6-8, 29, 47, 52, 62, 66, 71. Plaintiff, however, does not identify *any* plan provision that prohibits BCBSF from considering third-party data in determining out-of-network reimbursement or entitles Plaintiff to payment for out-of-network ambulance services at the provider's billed charges.

According to Plaintiff, BCBSF breached unidentified "group health plans" and "contracts of insurance" by "using flawed and invalid Ingenix databases to calculate UCR" and "calculat[ing] UCR using Ingenix data that was also outdated." Complaint ¶¶ 104-05. Nothing in Count 1, however, identifies a specific plan provision that confers the benefits requested—payment for out-of-network ambulance services at billed charges. *See id.* ¶¶ 29, 47. Instead, the only provision identified by Plaintiff purportedly "provides" that out-of-network reimbursement is determined based upon "[BCBSF's] medical, payment, and/or administration guidelines; pre-negotiated payment amounts; diagnostic related grouping(s) (DRG); payment for such services under the Medicare program; relative value scales; the charge(s) of the Provider; the charge(s) of similar Providers within a particular geographic area established by [BCBSF]; and/or the cost of providing the Covered Service." *Id.* ¶¶ 11, 31.[5]

---

[5] According to Plaintiff, his "contract of insurance" is manifested in an "Evidence of Coverage" that "sets forth the benefits Plaintiff and the members of the Class are entitled to receive." Complaint ¶¶ 47, 104. While Plaintiff alleges that the "contract of insurance" was provided to him, Plaintiff does not attach the Evidence of Coverage to the Complaint. *See id.* ¶ 29 (alleging that BCBSF "provided" the Evidence of Coverage "to members"), ¶ 44 (alleging that BCBSF "provided Plaintiff copies of materials mentioned in the letter denying his appeal and the plan booklet"). Nonetheless, because the Evidence of Coverage is incorporated in and central to the allegations in the Complaint, the Court may consider it on a motion to dismiss. *See Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 734-35 (7th Cir. 2002); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *cert. denied*, 525 U.S. 1001 (1998); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *Oplchenski v. Parfums Givenchy*, 2007 U.S. Dist. LEXIS 10113, at *2 n.1 (N.D. Ill. Feb. 12, 2007). A true and correct copy of Plaintiff's Evidence of Coverage (a/k/a Benefit Booklet) is attached as **Exhibit A**.

At the time that Plaintiff received the medical services alleged in the Complaint, the provision paraphrased by Plaintiff actually stated that the "allowed amount" for out-of-network services is the <u>lesser of</u> the provider's actual billed charge or

> <u>an amount established by BCBSF based on several factors including (*but not necessarily limited to*)</u>: BCBSF's medical, payment, and/or administration guidelines; pre-negotiated payment amounts; diagnostic related grouping(s) (DRG); payment for such services under the Medicare program; relative value scales; the charge(s) of the Provider; the charge(s) of similar Providers within a particular geographic area established by BCBSF; and/or the cost of providing the Covered Service.

Plaintiff's Benefit Booklet, § 23-1.  This provision has since been amended to further clarify that the "allowed amount" for out-of-network services is the <u>lesser of</u> the provider's actual billed charge or

> <u>an amount established by BCBSF that may be based on several factors including (*but not necessarily limited to*)</u>: (i) payment for such Services under the Medicare and/or Medicaid programs; (ii) payment often accepted for such Services by that Out-of-Network Provider and/or by other Providers, either in Florida or in other comparable market(s), that BCBSF determines are comparable to the Out-of-Network Provider that provided the specific Covered Services (which may include payment accepted by such Out-of-Network Provider and/or by other Providers as participating providers in other provider networks of third-party payers which may include, for example, other insurance companies and/or health maintenance organizations); (iii) payment amounts which are consistent, as determined by BCBSF, with BCBSF's provider network strategies (e.g. does not result in payment that encourages Providers participating in a BCBSF network to become non-participating); and/or (iv) the cost of providing the specific Covered Services. . . .  Please specifically note that, in the case of an Out-of-Network Provider . . . , <u>the Allowed Amount for particular Services is often substantially below the amount billed by such Out-of-Network Provider for such Services.  You will be responsible for any difference between such Allowed Amount and the amount billed for such Services by any such Out-of-Network Provider</u>.

Plaintiff's Benefit Booklet, 2008 Omnibus Endorsement.

On its face, this provision does not prohibit utilization of third-party data in determining out-of-network reimbursement or entitle Plaintiff to payment for out-of-network ambulance services at the provider's billed charges. In fact, it makes clear that BCBSF may consider a non-exclusive list of sources, including BCBSF's medical, payment and administrative guidelines, payment for such services under the Medicare program, and the amount accepted by comparable providers. Plaintiff's Benefit Booklet further makes clear that the insured is responsible for any amount billed by the out-of-network provider in excess of the allowed amount. *See* Benefit Booklet, §§ 5-4, 6-3.

Thus, Plaintiff's vague and conclusory assertion that BCBSF breached the terms of the plan falls short of ERISA's requirement that Plaintiff "identify a *specific plan term* that confers the benefit in question." *Stewart*, 471 F.3d at 174. Under *Twombly* and its progeny, BCBSF "should not be required to guess as to the manner in which its conduct allegedly violated [ERISA]." *Gamboa v. Tr. Corps.*, 2009 U.S. Dist. LEXIS 19613, at *10 (N.D. Cal. Mar. 12, 2009). Plaintiff's failure to identify a plan term that confers the benefits in question, and to explain how such plans terms were violated by BCBSF, therefore requires dismissal of Count 1.

## II. The Complaint Fails to State a Claim for Health Plan Benefits under Section 502(a)(1)(B) to the Extent that BCBSF Did Not Control Administration of the Plan

The Court also should dismiss Count 1 for health plan benefits under Section 502(a)(1)(B) of ERISA to the extent that Plaintiff (or his putative class) seeks recovery under any plan for which BCBSF did not control administration of the plan. In the Eleventh Circuit, the "proper party defendant in an action [under Section 502(a)(1)(B)] is

the party that controls administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (affirming dismissal of company that "serviced" plan where plan documents prescribed that employer controlled administration of the plan).

ERISA itself defines the plan "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated" or "if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A)(i), (ii). Under ERISA, the "plan sponsor" is "the employer in the case of an employee benefit plan established or maintained by a single employer." *Id.* § 1002(16)(B)(i). Plaintiff's Benefit Booklet (*see* Exhibit A) makes clear that Plaintiff's employer—not BCBSF—is the plan administrator within the meaning of ERISA:

- "We are not the plan sponsor or plan administrator of your Group Plan, as defined by ERISA. If the Group Plan under which you are covered is subject to [ERISA], the Small Employer, as either plan sponsor or plan administrator of an employee welfare benefit plan subject to ERISA, is responsible for ensuring compliance with ERISA." (Plaintiff's Benefit Booklet, § 22-3);

- "We are not your Group Plan's sponsor or plan administrator. In most cases, a plan's sponsor or plan administrator is the employer who establishes and maintains the plan." (*Id.* § 20-1);

- "If your Group Plan is subject to [ERISA], your plan administrator is solely responsible for complying with ERISA." (*Id.*); and

- "Under no circumstances will we be held responsible for, nor will we accept liability relating to, the failure of your Group Plan's sponsor or plan administrator to: 1) comply with ERISA's disclosure requirements; 2) provide you with a Summary Plan Description (SPD) as that term is defined by ERISA; or 3) comply with any other legal requirements." (*Id.*)

While the Eleventh Circuit has held that an employer can be a *de facto* administrator notwithstanding conflicting plan terms, it has thus far not extended this doctrine to suits against third-party administrators. *See Oliver v. Coca-Cola Co.*, 497 F.3d 1181, 1194 (11th Cir. 2007); *Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288, 290 (11th Cir.1989); *cf. Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001) (employer was *de facto* administrator); *Rosen v. TRW, Inc.*, 979 F.2d 191, 193-94 (11th Cir. 1992) (same).

However, even if the Court determines that Plaintiff has sufficiently alleged that BCBSF controlled administration of the ERISA plan upon which he relies (notwithstanding the terms of his Benefit Booklet), the Court should dismiss Count 1 to the extent that Plaintiff (or his putative class) seeks recovery under any plan for which BCBSF did not control administration of benefits. *See* Complaint ¶ 107 (alleging that BCBSF "is liable for a breach of its obligations to pay [insureds] that are <u>insured</u> by, <u>funded</u> by *or* <u>administered</u> by [BCBSF]").

### III. The Complaint Fails to State a Claim for Breach of Fiduciary Duty under Section 502(a)(3) Because Plaintiff Has an Adequate Remedy under Specific Provisions of ERISA

The Court should dismiss Count 2 for breach of fiduciary duty under Section 502(a)(3), ERISA's "catchall" provision, because Plaintiff has an adequate remedy under Section 502(a)(1)(B) and/or other specific provisions of ERISA. Under Section 502(a)(3), a participant, beneficiary or fiduciary may bring a civil action "to enjoin any act or practice which violates any provision of this title or the terms of the plan" or "to obtain other appropriate equitable relief." Section 502(a)(3), however, is a "catchall" that

acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity v. Howe*, 516 U.S. 489, 512 (1996). In *Varity* the Supreme Court held that "where Congress elsewhere provided adequate relief for a beneficiary's injury"—*e.g.*, under Section 502(a)(1)(B)—"there will likely be no need for further equitable relief, in which case such relief would not be 'appropriate'" under Section 502(a)(3). *Varity*, 516 U.S. at 514-15.

Following *Varity*, courts in the Eleventh Circuit have held that where a plaintiff has an adequate remedy under Section 502(a)(1)(B), the plaintiff cannot state a claim under Section 502(a)(3) based on the same factual predicate, either alone or in the alternative to a claim under Section 502(a)(1)(B). *See Kennedy v. Metro. Life Ins. Co.*, 357 F. Supp. 2d 1346, 1348-49 (M.D. Fla. 2005) (citing *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1073-74 (11th Cir. 2004); *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1288 (11th Cir. 2003); *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1088-89 (11th Cir. 1999)); *see also In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1327 (S.D. Fla. 2002). Notwithstanding "the fact that Plaintiffs have recast the relief they seek from claims for damages into claims for equitable relief, the Court must focus on whether the factual predicate for their claim could have supported a cause of action under [Section 502(a)(1)(B)]." *Tebbetts v. Blue Cross Blue Shield of Ala.*, Case No. 2:07-cv-925-MEF, 2009 U.S. Dist. LEXIS 54505, at *11 (M.D. Ala. Jun. 26, 2009). Furthermore, a Section 502(a)(3) claim must be dismissed under *Varity* even if the plaintiff's Section 502(a)(1)(B) claim is improperly plead, lost or otherwise unsuccessful. *See Tebbetts*, 2009 U.S. Dist. LEXIS 54505 at *13.

In Count 2, Plaintiff alleges that BCBSF breached its fiduciary duties under Section 502(a)(3) by miscalculating benefits and failing to disclose its use of Ingenix data to calculate those benefits. *See* Complaint ¶¶ 110-12. These are the same allegations that underlie Plaintiff's Count 1 for unpaid health plan benefits under Section 502(a)(1)(B). Even the relief sought by Plaintiff—declaratory and injunctive relief, restitution and interest—is duplicative of that sought in Count 1. *Compare* Complaint ¶ 107 *with* ¶ 113 (seeking restitution, declaratory and injunctive relief, and interest under both counts).

Plaintiff's attempt to differentiate his Section 502(a)(3) claim in Count 2 from his Section 502(a)(1)(B) claim in Count 1 by seeking "[r]eformation of claims processing procedures," which he claims "may not be available" for his 502(a)(1)(B) claim, does not save Count 2 from dismissal under *Varity* and its progeny.[6] Complaint ¶ 110. Plaintiff's request that BCBSF's claims processing procedures be "reform[ed]" is simply a request for injunctive relief, no different than the broad injunctive relief he has requested in Count 1. *See Kendall v. Employees' Ret. Plan of Avon Prods.*, 2007 U.S. Dist. LEXIS 68743, at *14 (S.D.N.Y. Sep. 14, 2007) (plaintiff's request for "reformation" was a form of "injunctive relief" under ERISA); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 180 (S.D.N.Y. 2006) ("plaintiffs seek injunctive relief including . . . reformation of the Plan"). Thus, Plaintiff's claim for "reformation" of claim processing procedures is nothing more than a recharacterization of his request for benefits in Count 1 under 502(a)(1)(B). *See Great-West Life v. Knudson*, 534 U.S. 204, 210-11 (2002); *see*

---

[6] Plaintiff cites no legal authority for his assertion that reformation "may not be available" under Section 502(a)(1)(B) of ERISA.

*also Moore v. Fox Chevrolet*, 2007 U.S. Dist. LEXIS 21252, at \*18-19 (N.D.N.Y. Mar. 26, 2007) (rejecting claim under Section 502(a)(3) because plaintiff was "attempting to dress [her] benefits claim in fiduciary duty clothing by requesting the same relief").

Finally, to the extent that Plaintiff alleges that BCBSF violated ERISA's disclosure requirements, Plaintiff has an adequate remedy under Section 502(a)(1)(A) for any alleged violations of Section 502(c). *See LaBrache v. Am. Maritime Officers Pension Plan*, 45 F. Supp. 2d 1335, 1340 (M.D. Fla. 1999); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1329 (S.D. Fla. 2002). Courts have repeatedly rejected attempts by litigants to use ERISA's fiduciary breach provisions to supplant and expand ERISA's carefully detailed disclosure requirements. *See Sprague v. GM*, 133 F.3d 388, 405 (6th Cir. 1998) (stating that "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed" and "[w]e are not aware of any court of appeals decision imposing fiduciary liability for a failure to disclose [such] information"); *Trustees v. Weinstein*, 107 F.3d 139, 147 (2nd Cir. 1997) (refusing to use general fiduciary duties under ERISA to require broader disclosures than those expressly provided for by Congress); *Faircloth v. Lundy*, 91 F.3d 648, 658 (4th Cir. 1996) (same).

Accordingly, the Court should dismiss Count 2 because Plaintiff has an adequate remedy (even if improperly plead or unsuccessful) for each of his claims under Section 502(a)(1)(B) or other specific provisions of ERISA.

**IV. The Complaint Fails to State a Claim for Breach of Fiduciary Duty Based upon Denial of a "Full and Fair Review," Misrepresentation or Omission, or Equitable Restitution**

The Court should dismiss Count 2 for the further reason that Plaintiff fails to state a claim for breach of fiduciary duty under ERISA's "catchall" provision.

**A. The Complaint Fails to State a Claim for Denial of a "Full and Fair Review" of Plaintiff's Claims**

To the extent that Plaintiff alleges that he was denied a "full and fair review" of his claims,[7] the Complaint fails to state a claim. Section 503 of ERISA requires employee benefit plans to provide "specific reasons" for denial of claims and a "reasonable opportunity" for a "full and fair review" of the decision denying the claim. Under 29 C.F.R. § 2560.503-1(h)(2)(iii), the plan must "[p]rovide . . . upon request . . . all documents, records, and other information relevant to the claimant's claim for benefits." A document is "relevant" if it "[w]as relied upon" or "[w]as submitted, considered, or generated in the course of making the benefit determination." *Id.* § 2560.503-1(m)(8)(i)-(ii).

As an initial matter, Section 503 applies only to "employee benefits *plan[s]*." 29 U.S.C. § 1133. As the Supreme Court has explained, Section 503 "merely specifies that every *plan* shall comply with certain regulations promulgated by the Secretary of Labor." *Mass. Mut. v. Russell*, 473 U.S. 134, 143 (1985). Section 503 thus "imposes duties only upon plans and *not upon administrators*." *Groves v. Mod. Ret. Plan*, 803 F.2d 109, 116

---

[7] While Plaintiff does not plead a stand-alone count for denial of "full and fair review," Plaintiff requests a declaration that BCBSF "has failed to provide a 'full and fair review' to Plaintiff and the Class." *See* Complaint, ¶¶ 43-44, 85-90, Prayer for Relief, § I.

(3rd Cir. 1986); *Ranke v. Sanofi*, 2004 U.S. Dist. LEXIS 22427, at *22 (E.D. Pa. Nov. 2, 2004) (dismissing claim against plan administrator because Section 503 "imposes duties only on plans"); *Cortez v. Prudential Ins.*, 2008 U.S. Dist. LEXIS 93891, at *11 (W.D. Mich. Sept. 19, 2008) (no claim for violation of Section 503 may be pled against plan administrator). Here, Plaintiff does not allege that BCBSF is the plan. Complaint ¶ 25.

Moreover, Plaintiff fails to state a claim for denial of "full and fair review." *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241 (11th Cir. 2008), *cert. denied*, 129 S. Ct. 646 (2008) (holding that expert report prepared while claim was on appeal need not be provided to claimant until appeal is decided). Plaintiff's allegations comprise nothing more than a "formulaic recitation" of the elements of a claim under Section 503. Plaintiff asserts, simply quoting Section 503, that he did not receive a "full and fair review" of his claim. *Compare* Complaint ¶ 60 *with* 29 U.S.C. § 1133(2). Yet Plaintiff does not identify any respect in which the *claims process* was deficient. In fact, Plaintiff concedes that BCBSF "provided Plaintiff copies of materials mentioned in the letter denying his appeal and the plan booklet." *Id.* ¶ 44. At most Plaintiff alleges that BCBSF failed to give "specific reasons" for the adverse benefit determination by not disclosing the Ingenix data itself.[8] *See* Complaint ¶¶ 43-44, 55, 60, 85-90. However, Section 503 simply does not require disclosure of each piece of data that relates in any way to an appeal—only data that was relied upon, submitted, considered or generated in the course of making the benefit determination.

---

[8] Plaintiff also alleges no facts supporting his conclusory allegations that BCBSF "discouraged claims appeals . . . by providing insufficient information." Complaint ¶ 95.

**B.     The Complaint Fails to State a Claim for Misrepresentation or Omission by BCBSF**

The Complaint also fails to state a claim to the extent that Plaintiff seeks recovery for alleged "misstatements" or omissions by BCBSF. *See* Complaint, ¶¶ 65, 93. Under ERISA, a fiduciary's allegedly negligent misstatement or omission about plan terms is "not actionable." *See Frahm v. Equitable*, 137 F.3d 955, 959 (7th Cir. 1998); *Vallone v. CNA*, 375 F.3d 623, 642 (7th Cir. 2004) ("[W]hile there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable. . . . [T]he employer must have set out to disadvantage or deceive its employees . . . in order for a breach of fiduciary duty to be made out."). In addition, individual reliance is a necessary element of a claim for an intentional misrepresentation. *See Spangler v. Altec*, 1999 U.S. App. LEXIS 2114, at *8 (7th Cir. Feb. 9, 1999).

Accordingly, Plaintiff fails to state a claim for breach of fiduciary duty under Section 502(a)(3) based on misrepresentations or omissions because he does not allege any facts demonstrating that BCBSF acted intentionally or that BCBSF should have made disclosures in addition to those mandated by ERISA. *See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). Plaintiff's allegation that BCBSF "fail[ed] to inform [BCBSF] members of . . . the Ingenix databases" does not allege the requisite intent. Complaint ¶ 112. At best, Plaintiff alleges that BCBSF "knew or should have known" of the problems with Ingenix data. Complaint ¶¶ 14-20, 57, 70. This is insufficient for liability under Section 502(a)(3).

### C. The Complaint Fails to State a Claim for Equitable Restitution

Restitution is unavailable under Section 502(a)(3) under the facts alleged in the Complaint. For restitution to be available under Section 502(a)(3), "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 214. As Plaintiff himself acknowledges, the particular funds he seeks are in the possession of the out-of-network providers—not BCBSF. *See* Complaint ¶¶ 9-10 (alleging that health plan members are financially responsible for the difference between what BCBSF pays and the provider's billed charges). Because the "particular funds" that Plaintiff allegedly overpaid are in the possession of the doctors who provided the out-of-network services, Plaintiff does not have a claim for restitution against BCBSF. *See also Admin. Comm. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Horton*, 513 F.3d 1223 (11th Cir. 2008); *compare Space Gateway Support v. Prieth*, 371 F. Supp. 2d 1364, 1369 (M.D. Fla. 2005) (denying motion to dismiss because plaintiff alleged that the funds were in the possession of the defendant).

### V. The Complaint Fails to State a Claim for Violation of ERISA's Disclosure Requirements

To the extent that Plaintiff alleges that BCBSF violated ERISA's disclosure requirements, the Complaint also fails to state a claim.[9] Sections 102 and 104(b)(4) of

---

[9] While Plaintiff does not plead a stand-alone count for violation of ERISA's disclosure requirements, the Complaint alleges numerous "non-disclosures" and requests declarations related thereto. *See* Complaint ¶¶ 32, 43, 53-56, 58-59, 65, 76, 87-88, Prayer for Relief (B), (C), (N).

ERISA require highly specific disclosures to be made in particular documents. *See* 29 U.S.C. §§ 1022, 1024(b)(4); *cf. Massachusetts v. Morash*, 490 U.S. 107, 118 (1989) (noting ERISA's "detailed requirements for reporting and disclosure"). Section 104(b)(4) obligates the administrator to furnish to participants "a copy of the latest updated [summary plan description], and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 102 prescribes required disclosures in summary plan descriptions, which are "calculated to be understood by the average plan participant." 29 U.S.C. § 1022.

As an initial matter, any claim for violation of ERISA's disclosure requirements must be brought under Section 502(a)(1)(A) for the relief specified in Section 502(c). *See* 29 U.S.C. § 1132(a)(1)(A) ("A civil action may be brought by a participant . . . for the relief provided for in subsection (c) [*i.e.*, 502(c)]."); *see also See Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 914 n.70 (11th Cir. 1997), *cert. denied*, 523 U.S. 1120 (1998). "[A]n aggrieved participant *must* sue under section 502(a)(1)(A) for the relief provided in section 502(c)." *Hozier v. Midwest Fasteners*, 908 F.2d 1155, 1167 (3rd Cir. 1990); *Ross v. Rail Car*, 285 F.3d 735, 743 n.9 (8th Cir. 2002) (It is "Section 502(a)(1)(A) of ERISA [that] authorizes a cause of action for the relief requested in section 502(c)."). Because Plaintiff has not brought any claims under Section

502(a)(1)(A), Plaintiff's claim for violation of ERISA's disclosure requirements must be dismissed.[10]

Moreover, Plaintiff has not pled a violation of ERISA's disclosure requirements in Sections 102 or 104(b)(4). *See Ames v. Am. Nat'l Can*, 170 F.3d 751, 759 (7th Cir. 1999) ("[T]he affirmative obligation to disclose materials under ERISA . . . extends only to a defined set of documents."); *Jordan v. FedEx*, 116 F.3d 1005, 1013 (3d Cir. 1997) (ERISA's "statutory reporting and disclosure requirements and remedies were carefully considered and described by Congress."); *Faircloth v. Lundy*, 91 F.3d 648, 657 (4th Cir. 1996) (ERISA "does *not* require a plan fiduciary to furnish information to participants and beneficiaries in addition to that which ERISA's specific disclosure provisions already require."). Plaintiff fails to identify what disclosure documents he believes were inadequate, what language in such documents was inadequate, or what language in Section 102 or 104(b)(4)—or the regulations thereunder—requires the specific disclosures that Plaintiff asserts should have been made.

In the present case, Plaintiff alleges that BCBSF failed to disclose, in "Evidences of Coverage" and summary plan descriptions, each factor considered in determining the allowed amount for each type of out-of-network medical services and all "data

---

[10] The proper defendant in a suit under Section 502(c)(1) is the plan administrator. *See Kennedy v. Metro. Life Ins. Co.*, 357 F. Supp. 2d 1346, 1349 (M.D. Fla. 2005); *Kobold v. Aetna U.S. Healthcare, Inc.*, 258 F. Supp. 2d 1317, 1324 (M.D. Fla. 2003). As explained in Part II *supra*, BCBSF is not a proper defendant to the extent that it was not the plan administrator. *See* Plaintiff's Benefit Booklet, § 20-1 ("Under no circumstances will we be held responsible for, nor will we accept liability relating to, the failure of your Group Plan's sponsor or plan administrator to: 1) comply with ERISA's disclosure requirements; 2) provide you with a Summary Plan Description (SPD) as that term is defined by ERISA; or 3) comply with any other legal requirements.").

supporting" these factors including any Ingenix data. *See* Complaint ¶¶ 32, 53-56, 58-59, 65, 76, 87-88. However, such detailed information is not required to be disclosed in either the Evidence of Coverage or SPD. *First*, the "Evidence of Coverage" is not a *disclosure* document at all—rather, it is a formal plan document between the parties. *See Bell v. Pfizer*, 499 F. Supp. 2d 404, 413 n.8 (S.D.N.Y. 2007) (ERISA disclosure regulations "apply to summary plan descriptions, not to formal plan documents."); *Boisvert v. Am. Serv. Bureau*, 1996 U.S. Dist. LEXIS 12503, at *11 (N.D. Ill. Aug. 26, 1996) (ERISA "[p]lan documents" includes "insurance contracts"). *Second*, there is not requirement that the summary plan description contain the information requested by Plaintiff. *See* 29 U.S.C. § 1022.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, BCBSF respectfully requests that the Court dismiss Plaintiff's Class Action Complaint, award BCBSF reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and Fed. R. Civ. P. 54, and grant such other and further relief as the Court deems just and proper.

### McDERMOTT WILL & EMERY LLP

By: _____*/s/ Steven E. Siff*_____
       Steven E. Siff (FBN 352330) (Trial Counsel)
       *ssiff@mwe.com*
       Justin B. Uhlemann (FBN 568872)
       *juhlemann@mwe.com*
       201 S. Biscayne Blvd., Ste. 2200
       Miami, Florida 33131
       Tel.  305.358.3500
       Fax.  305.347.6500

*Counsel for Defendant*
*Blue Cross and Blue Shield of Florida, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on __September 14, 2009__, a copy of the foregoing was (1) electronically filed with the Clerk of Court using the CM/ECF system, which automatically sends electronic notification to William Bryan Young, Jr., COLLING, GILBERT, WRIGHT & CARTER, 801 North Orange Avenue, Suite 830, Orlando, Florida 32801, *Counsel for Plaintiff Timothy D. Taylor*, and (2) served by first class U.S. mail upon Gregory Y. Porter, BAILEY & GLASSER LLP, 910 17th Street, NW, Suite 800, Washington, D.C. 20006, Brian A. Glasser and Michael L. Murphy, BAILEY & GLASSER LLP, 209 Capitol Street, Charleston, West Virginia 25301, Todd M. Schneider and Mark T. Johnson, SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP, 180 Montgomery Street, Suite 2000, San Francisco, California 94104, Garrett W. Wotkyns, SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP, 7702 East Doubletree Ranch Road, Suite 300, Scottsdale, Arizona 85258, Edwin R. Lamberth and Steven L. Nicholas, CUNNINGHAM BOUNDS, LLC, 1601 Dauphin Street, Mobile, Alabama 36604, and Mark A. Chavez, Nance Becker and Jonathan E. Gertler, CHAVEZ & GERTLER LLP, 42 Miller Avenue, Mill Valley, California 94941, *Co-Counsel for Plaintiff Timothy D. Taylor*.

_____*/s/ Steven E. Siff*_____
Steven E. Siff

MIA 351428-2.022370.0046